IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 7:22-CR-0001 |
| | : | |
| JERALD FRANCIS GRAY | : | |

## GOVERNMENT RESPONSE TO THE OBJECTION TO A PROTECTIVE ORDER

COMES NOW the United States of America, by counsel, and submits this motion in response to a defense motion styled "Defendant's Objection to Government's Motion for a Protective Order."  In his initial motion, defense counsel states, "Most discovery is not sensitive or privileged and should not be subject to a protective order."  The government disagrees with this statement as a general matter, but as it pertains to Mr. Gray's case, who stands indicted for possessing child pornographic materials in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2),[1] it is incorrect as a matter of law.  Title 18 of the United States Code, Section 3509(m), mandates that the sensitive evidence at the core of this case must remain solely within the "care, custody, and control of either the Government or the court."  The Court has broad discretion to control the discovery process. including issuing protective orders, pursuant to Federal Rule of Criminal Procedure 16. As outlined below, there are many good reasons for the Court to do so, both in this case and in the vast majority of federal criminal cases that come before this Court.  As such, the government requests that the Court deny the defendant's motion and maintain the protective order as issued.

---

[1] *See* ECF # 27.

1

PROCEDURAL POSTURE

The grand jury returned a true bill against the defendant on January 13, 2022. The defendant stands indicted for knowingly possessing one or more matters containing visual depictions of minor children, including prepubescent minors and minors who had not attained 12 years of age, engaging in sexually explicit conduct, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2). (*See* ECF #27). The government filed a motion on January 26, 2022, styled "Motion for Voluntary Disclosure of Grand Jury and Other Materials and for Limitations on Further Disclosure." (*See* ECF #34). The defense counsel filed an objection to the issuing of a protective order on January 26, 2022. (*See* ECF #35). The requested protective order was granted on January 31, 2022. (*See* ECF #37). The defendant then filed a motion styled "Defendant's Objection to Magistrate's Order Granting Government's Motion for a Protective Order" in which the defendant requested that the Court strike the protective order for being clearly erroneous or contrary to law. (*See* ECF #40). The Court then ordered the government to respond (ECF #41) and in turn, the government submits this brief in response.

LAW AND ARGUMENT

"There is no general constitutional right to discovery in a criminal case." Weatherford v. Bursey, 429 U.S. 545, 559 (1977); see also, U.S. v. Larouche, 896 F.2d 815, 826 (4th Cir. 1990). Instead, discovery in a criminal case is governed by the provisions of Rule 16 of Federal Rules of Criminal Procedure. Under Rule 16, the court has broad discretion to control discovery, and that broad discretion includes the issuing of protective orders.[2] In this case, there are both general and specific reasons for the government's request for a protective order as set forth

---

[2] See, generally, U.S. v. Bulger, 283 F.R.D. 46, 53 (2012), collecting cases including SmithKline Beecham Corp. v. Synthon Pharmaceuticals, Ltd., 210 F.R.D. 163, 166 (M.D.N.C. 2002); U.S. v. Gurney, 558 F.2d 1202, 1211 n.15 (5th Cir. 1977).

below. To some extent, however, the defense counsel's objection suggests that the Court does not possess independent authority to issue a protective order absent a request from the government accompanied by a showing of good cause. The case law would suggest otherwise, and the Court may find good cause exists for a protective order even in the absence of a request from the government.

The legal standard applicable to the Court's review is set forth in the rule itself. Rule of Criminal Procedure 16(d)(1) states, "Protective and Modifying Orders. At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." However, the legal test for determining or assessing "good cause" as that phrase applies to the defendant's objection to the protective order in this case is not clearly established by case law.[3] This may be a reflection of the Court's broad discretion to control or regulate discovery under Rule 16, combined with the fact that protective orders governing criminal discovery is not an area of law that gets litigated frequently.[4]

### A. The existing protective order is necessary because the materials in this case are subject to special statutory protections.

First, "good cause" for the protective order is inherent in the nature of this case. The defendant has been indicted for violating 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2). The government alleges that the defendant possessed one or more depictions of minors, including prepubescent minors and minors who had not attained 12 years of age, engaging in sexually

---

[3] The legal test expressed in U.S. v. Dixon, 355 F.Supp.3d 1 (D.C. Dist.Ct. 2019), seems most apt to the current case. In Dixon, the court used a test balancing the need to protect victims and witnesses by means of a protective against any prejudice to the defendant or harm to the public by considering two primary factors: the nature and circumstances of the alleged crime and the defendant's criminal history. Id. at 2.

[4] The federal district court for the District of Columbia seems to address the issue more than others, likely due to the fact that the District of Columbia is a densely populated, exclusively federal jurisdiction within which all crime is prosecuted in federal court, creating a diversity of cases different in kind and number from most federal jurisdictions.

explicit conduct. (See ECF #27). Title 18 of the United States Code, Section 3509(m)(1), mandates that the sensitive evidence at the core of this case must remain solely within the "care, custody, and control of either the Government or the court." What is more, the statute even restricts the applicability of Rule 16 in this case. 18 U.S.C. § 3509(m)(2). Thus, the defendant has objected to the protective order in a case so inherently sensitive that a statute requires special protection of the discovery material that forms the bulk of the evidence in this case.

### B. The existing protective order is necessary to prevent disclosures that could undermine other investigations.

In this case, "good cause" exists equally for the remaining materials beyond the child exploitative evidence itself in order to: (1) shield investigative techniques from public knowledge, and (2) to preserve the integrity of ongoing investigations. Simply put, the defendant in this case attempted to conceal his criminal conduct – and his identity – by use of anonymizing computer software which necessitated advanced investigative techniques by law enforcement to resolve. This case is one of several local ongoing investigations involving the possession and receipt of child exploitative material using the same anonymizing computer software. Public disclosure of the discovery material in this case could reveal law enforcement techniques and might enable other suspects to destroy evidence, evade justice, or even improve the software to ensure they can continue to traffic in child exploitative sexual material with impunity. When viewed in this light, defense counsel's assertion that, "Most discovery is not sensitive or privileged and should not be subject to a protective order[,]" rings hollow.

### C. The existing protective order is necessary to protect the identities of victims and witnesses.

An overarching justification for protective orders in most criminal cases is that the selective disclosure of discovery materials by a defendant or defense counsel could adversely

4

impact the safety of law enforcement officers, victims, and witnesses. In many federal criminal cases, there exists the potential for retributive violence against the investigators, victims, and witnesses. In one recent case in this district, U.S. v. Joseph Coquia Martin, case number 7:20-CR-32, a defendant pled guilty to *attempting to murder* a cooperating witness. Unfortunately, the incentive for a defendant to intimidate, harass, embarrass, or threaten the witnesses against them is inherent to the prosecution of most federal criminal cases, and it creates a clear and present danger as an overarching concern.

That concern is heightened in this case. As reflected in the testimony during the contested detention hearing, the defendant has confessed to actual child molestation. Thus, the government has good cause to seek a protective order to protect the identities of witnesses and victims in this case for certain. What is more, the Crime Victims' Rights Act grants victims of crimes "the right to be reasonably protected from the accused" as well as the right to be treated "with respect for the victim's dignity and privacy." 18 U.S.C. § 3771(a)(1), (8). The protective order in this case plays an important role in ensuring those statutory obligations are met.

### D. The existing protective order is necessary to facilitate prompt, expansive discovery and the efficient administration of justice.

The defendant's objection to the protective order is, frankly, counter-productive. A protective order facilitates timely, expansive discovery which in turn facilitates progress in the case. In most criminal cases, reports of law enforcement agents comprise a substantial volume of the materials the government discloses during discovery. These are documents that are expressly excluded from disclosure by Federal Rule of Criminal Procedure 16(a)(2).[5] These reports are replete with sensitive information: (1) they disclose methods and procedures used by law

---

[5] See, e.g., U.S. v. Sileven, 985 F.2d 962, 966 (8th Cir. 1993), citing U.S. v. Krauth, 769 F.2d. 473, 476 (8th Cir. 1985).

5

enforcement to identify wrongdoers, including this defendant, and gather evidence against them, disclosure of which would harm ongoing investigations as well as future ones; (2) they contain information about one or more victims which should not be revealed publicly;[6] (3) they implicate the privacy interests of witnesses or other third parties associated with the matter; and (4) they contain devastatingly personal information about the defendant, the public disclosure of which could subject him to pretrial harm, if not ridicule or harassment.

In this case, the defendant's counsel refused to agree to the joint discovery order and requested discovery solely pursuant to Rule 16. But much of the discovery in this case – other than the substantive evidence specifically protected by statute – consists of agents' investigative reports or work product that would be excluded from disclosure under Rule 16(a)(2). The protective order creates conditions which permit more expansive discovery – in this and most other federal criminal cases – than what is required solely under Rule 16. More expansive discovery is in the government's interest as it is dedicated to due process and justice and prefers transparency, but it is also in the interest of the court, society at large, and the defendant.

To the extent that the defendant's objection in this case can be construed as an attempt to change the use of protective orders in federal criminal cases in this District, it seems somewhat short-sighted. Such a change would only hamper the ability of defendants to fully and promptly review discovery and prepare their defense. Taken to its extremes, the regime proposed by the defense counsel would have the government and defense counsel litigate in each criminal case which items of discovery should be subject to a protective order and which should not, all ostensibly under the supervision of the court. This is a proposal for litigation solely for the sake

---

[6] The Crime Victims' Rights Act guarantees victims "[t]he right to be treated with fairness and with respect for the victim's dignity and privacy." 18 U.S.C. § 3771(a)(8). There is specific protection provided for child victims, as exists in this case, pursuant to 18 U.S.C. 3509(d)(1).

of being litigious, and it is not in anyone's interest: not the Court's, not the government's, and not the defendant's.

> **E. The existing protective order is necessary to minimize pretrial publicity and avoid tainting the jury pool.**

Finally, the government, the court, and the defendant all have a vested interest in limiting pretrial publicity to prevent corruption of the jury venire. Arguably, this concern alone could justify a protective order as a routine procedure by the court, subject to modification after its imposition. That concern is amplified in a child pornography case such as this one given the "acute opprobrium inherent in such offenses." United States v. Trzaska, 781 Fed. Appx. 697, 704 (10th Cir. 2019).

> **F. The foregoing reasons, independently and collectively, demonstrate that good cause exists to maintain the existing protective order.**

The reasons cited above establish good cause for the Court to maintain the existing protective order. And nothing in the case law – including those cases cited by defendant – suggest otherwise. The cases relied on by the defendant are dominated by two recurring themes: (1) a number of the cases arise from civil suits, not criminal cases, and (2) the cases involved requests by the press for access to discovery materials. These cases, therefore, are largely inapposite to the circumstances of defendant's case.

> *i.   Discovery in civil cases is fundamentally different from that of criminal cases.*

Defendant cites to a number of cases involving civil discovery protective orders. In fact, much of the existing body of case law on protective orders in discovery come from civil suits. This highlights a crucial point: there are significant differences between the regulation of discovery in federal civil cases as compared to federal criminal cases. The rules themselves are

different,[7] reflecting the different issues and concerns inherent to each but not the other. Perhaps most significantly, unlike the civil rules which require a party to move for a protective order, Rule 16 grants the Court authority to issue such an order on its own.

Beyond the difference in the rules themselves, discovery disputes in a civil case typically involve a context which is very different from the concerns surrounding discovery disclosures in a criminal case. Notably, discovery in a criminal matter typically flows in one direction – from the government to the defendant – which is normally not the case in the civil context. This asymmetry directly impacts the nature of the discovery material provided in the routine criminal case; it is inherently government-based, non-public information of a sensitive nature. The defendant's objection to the protective order in this case neglects these key differences.

        ii.    *Considerations involving requests for press access to discovery are not present in this case.*

There is a second major theme reflected in the cases cited in the defendant's brief. Namely, the cited cases typically involve a request for access to discovery materials by members of the press. The Bulger case cited by the defendant is a good example of this, although that case was further complicated by the fact that a significant amount of discovery was already in the public record through prosecution of other criminal cases, related civil suits, congressional

---

[7] *Compare*, Federal Rule of Civil Procedure 26(c) with Federal Rule of Criminal Procedure 16(d). The former provides, in part, "*In General*. A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending[.]" Then, after imposing a requirement for the parties in the civil matter to confer, "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" This rule establishes a completely different regime from the one imposed by Federal Rule of Criminal Procedure 16(d): "At any time the court may, for good cause, deny restrict, or defer discovery or inspection, or grant other appropriate relief." Note that the civil rule requires a party or person to move for the protection, which may be granted for good cause, whereas the criminal rule instills that authority directly under the court's discretion. While the undersigned counsel has only limited experience with civil lawsuits, it appears that most of the protective orders are negotiated between the parties and entered jointly, limiting the applicability of Rule 26 of the Federal Rules of Civil Procedure.

hearings, and even books.[8] As such, the Bulger opinion should be assessed in light of its underlying issues which, frankly, are not routine or present in this case.

>       iii.   Johnson *is inapplicable because it did not involve any identifiable crime victims.*

The one case cited by the defendant that seems most favorable to the defendant's position, at least in tone and tenor, is the D.C. District Court opinion, U.S. v. Johnson, 314 F.Supp.3d 248 (2018).[9] However, Johnson has been distinguished by its sister court within the District Courts of the District of Columbia for reasons that are relevant to this case. See U.S. v. Dixon, 355 F.Supp.3d 1 (2019). In short, the judge in Johnson decided that the government should redact out of body-camera footage, before turning it over in discovery to the defendant, anything that should be protected, such as statements by prospective government witnesses, information that identifies such witnesses, and any other matter not subject to disclosure under Rule 16(a).[10] The judge in the Johnson case also decided that once the Federal Public Defender's Office received any such discovery, they were permitted to use that discovery in other cases, and were also permitted to maintain custody of the government provided discovery even after the case was ended.[11] However, the Johnson opinion did prohibit the Federal Public Defender's Office from disclosing the footage to the public at large.[12]

In contrast, the judge in Dixon found good cause for a protective order relating to body-worn camera material "to expedite the provision of discovery to Dixon while guarding the

---

[8] See, generally, U.S. v. Bulger, 283 F.R.D. 46, 49 (2012).

[9] Both of the defendant's briefs miscite this case as 314 F.Supp.32 248 (D.D.C. 2018), but by all appearances the defendant meant to cite to the Johnson case at 314 F.Supp.3d 248 (D.D.C. 2018).

[10] Johnson at 254.

[11] Id. at 256, 257.

[12] Id.

9

victim's privacy and safety rights."[13] The Dixon court expressly limited the defendant's viewing, use, dissemination, and post-litigation retention of the discovery.[14] In fact, it is fair to characterize the Dixon opinion as rejecting much of the reasoning set forth in the earlier Johnson opinion. The court in Dixon pointed out that there is no authority for a defendant or defense counsel to have "unfettered right to government property in perpetuity and for any purpose."[15] Furthermore, Dixon points out that the Johnson opinion – involving a felon-in-possession charge – had no reason to consider the Crime Victim Rights Act, 18 U.S.C. § 3771, and "the obligations it places on courts to protect victims and their privacy."[16] That fact alone distinguishes Johnson from this case, which like Dixon, involves an identifiable victim.

Significantly, the Dixon court also expressly rejected the regime proposed in Johnson in which the government, in lieu of turning over discovery pursuant to a protective order, would instead first redact out matters prior to disclosing the discovery. The court in Dixon pointed out that this regime would impede "efficient and expeditious discovery" and that courts have "considerable discretion to regulate discovery, and protective orders are a useful tool for 'expediting the flow of pretrial discovery materials.'"[17] The court in Dixon concluded,

> But issuing a protective order is the only way to avert the possible harm to the victim and witnesses of having their names, faces, and other personally identifying information released. Because release of this information would pose a hazard to these individuals, and because protecting this information will not harm Dixon or the public, the Court will enter the Government's proposed orders.[18]

---

[13] U.S. v. Dixon, 355 F.Supp.3d 1, 1 (2019).

[14] Id.

[15] Id. at 7. The court also noted that there was no obligation or right for the Federal Public Defender's Office "to develop a video library repository allowing it to act as an ombudsman of possible police misconduct." Id.

[16] Id. at 6.

[17] Id. at 8, citing Bulger, 283 F.R.D. at 53.
[18] Id.

10

All of this holds true in the case at hand.

      iv.     *<u>Defendant does not identify any prejudice to him from the protective order.</u>*

At this point, it should be noted that the defendant has not set forth any justification for his objection to a protective order, nor has he so much as suggested how he is harmed by the protective order. Frankly, it is difficult to discern any harm to the defendant in being provided more discovery than is otherwise required, in a timely manner, subject to the restriction that the defendant use it to prepare for their case. It is similarly difficult for the government to discern how the unprotected release of discovery to the defendant actually benefits the defendant – in this case or in most other cases.

Instead, the defendant has simply asserted that no good cause exists (ECF #35) and then suggested rhetorically (ECF #40) that the practice in the Western District of Virginia is an outlier, implying that other jurisdictions do not use protective orders.[19] Contrary to that assertion, virtually all federal criminal cases are serious matters and most involve sensitive

---

[19] Several years ago, a senior member of the U.S. Attorney's Office informally surveyed colleagues in districts spanning across the United States on their practice regarding the use of protective orders for discovery. While the local practice varied in the details, the undersigned counsel is confident that current practices within the Western District are generally consistent with the practice in other jurisdictions. The examples submitted by the defense counsel are unpersuasive. Three of the five appear to be joint orders or without objection, specifically ECF #40-1 (<u>U.S. v. Derek Chauvin</u>), ECF #40-2 (<u>U.S. v. Elizabeth Holmes & Ramesh "Sunny" Balwani</u>), and ECF #40-4 (<u>U.S. v. Lawrence Nassar</u>). The defendant in <u>U.S. v. Stephen K. Bannon</u> raised arguments remarkably similar to those being made in this case (<u>see</u>, Docket #11, U.S. District Court for the District of Colombia, case number 1:21-cr-0670) and the judge nevertheless imposed the requested protective order subject to the notable exception of excluding documents that were already possessed by the defendant or public documents, as reflected in ECF #40-3. The last sample protective order submitted by the defense counsel in this case, ECF #40-5, arises from the case of <u>U.S. v. Dylann Storm Roof</u>.  The government notes that paragraph II, subparagraph 5, of that protective order permits the government to mark any discovery matter as "restricted" when the government determines that marking it as such is required for security or privacy concerns.  This process is of little difference from the current practice here except it requires the government to take an additional step of marking "restricted" on the discovery.  None of these exhibits submitted by the defense support their contention that the practice within the Western District of Virginia is unnecessarily broad or otherwise unjustified.

discovery material. There may well be cases in which a protective order is unnecessary, but those are the exception rather than the rule and this case certainly is not one of them.[20]

## CONCLUSION

The defense counsel proposes a regime in which the Court would engage in mediating discovery, category of evidence by category of evidence, or even item by item, case by case. It is essentially a proposal to litigate for the sake of being litigious. Good cause exists for many reasons, to include protection of discovery material that is required by statute to remain protected, to protect the integrity of ongoing criminal investigations, to protect advanced investigative techniques from public disclosure, to protect the identities of victims pursuant to their rights, to enforce statutory requirements, to protect the privacy interests of other persons, to reduce the possibility of retributive violence, to ensure advancement of the case, to preserve the integrity of the jury venire, and even to protect the privacy interests of the defendant. Since good cause exists for the reasons set forth in this brief, the government asks that the Court uphold the protective order.

Respectfully submitted,

CHRIS R. KAVANAUGH
UNITED STATES ATTORNEY

/s/ Matthew M. Miller
VA Bar No. 43034
Attorney for United States of America
U.S. Attorney's Office
310 1st Street SW, Suite 901
Roanoke, Virginia 24011
540-857-2250 (office)

---

[20] In his motion objecting to the protective order (ECF #35), defense counsel argued that the protective order was "self-defeating" because of the provision allowing a detained defendant to access the discovery so long as the discovery was maintained within the custody of a prison or jail official. This provision is an attempt at a compromise that permits a detained defendant to personally review the discovery materials if they so choose – under the supervision of responsible government personnel – while preventing the dissemination of discovery material within the larger prison or jail complex. If the defense counsel is suggesting that this provision should be reconsidered and potentially deleted, the government is certainly willing to do so.

CERTIFICATE OF SERVICE

I hereby certify that on February 11, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel for defendant.

/s/ Matthew M. Miller
Assistant United States Attorney