IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

United States of America

       v.                          Docket No. 7:22-CR-1

Jerald Gray

**Defendant's reply to government's response**

The government's response spends twelve pages arguing against a strawman[1] without addressing the issues before the court: what discovery should be subject to a protective order and what restrictions should be placed on that discovery? Mr. Gray is not objecting to *any* protective order, simply the government's unreasonable, unmatched, untenable order unsupported by any showing of good cause.

Mr. Gray proposes the court grant the defense's proposed protective order, which allows the Mr. Gray to receive any of his discovery except for material that is marked "sensitive" or "highly sensitive." This order adequately protects the government's legitimate interest in keeping some discovery subject to stringent conditions but allows Mr. Gray the ability to possess discovery that does not implicate any of those privacy concerns.  As shown in exhibit one, even El Chapo was able to receive a copy of some of his discovery. If the murderous head of an infamous trans-national drug cartel can have a copy of some of his discovery, so can Mr. Gray.

---

[1] As one example, the government claims that 18 U.S.C. §3509(m) restricts "the applicability of Rule 16 . . . [to] the discovery material that forms the bulk of the evidence in this case." That statute merely restricts the distribution of "any property or material that constitutes child pornography." Counsel specifically articulated that Mr. Gray was not asking to receive any copies of any child sexual abuse material. And yet the government repeats that same strawman argument on pages 1, 4, and 6 of its motion.
    Even if the government's argument were not a response to a strawman, it is inherently contradictory. CSAM is excluded by law from discovery. *See* 18 U.S.C. §3509(m)(2). But the government claims that the discovery in this case needs a protective order because it contains CSAM. It does not. It cannot. The government's position is both disingenuous and meritless.

The government asserts five[2] arguments in support of its protective order, but none is convincing, and none is supported by caselaw. Nor does a single case cited by the government support its position that Mr. Gray should be categorically prohibited from possessing any of his discovery. Each of the government's arguments is addressed in turn.

**A protective order is unnecessary to prevent disclosures that could affect other investigations.**

The government claims that Mr. Gray "attempted to conceal his criminal conduct [ ] and his identity [ ] by use of anonymizing computer software which necessitated advanced investigative techniques by law enforcement to resolve [sic]." This is false. The government's discovery shows that Mr. Gray used a freely available, legal, open-source peer-to-peer networking software to obtain files of alleged CSAM. That software, FreeNet, does not anonymize anyone's identity or conduct. Instead, it allows individuals to obtain files stored in its network by sending requests to other computers using the same software. When files are uploaded to FreeNet, they are broken into small blocks that are encrypted and stored on various user's hard drives. Individuals are unable to access the blocks stored on their own computers and would be unaware of the contents of the whole files. When a person requests a particular file, the person's computer sends a request to several other users who are running FreeNet. If the computer that receives a request has portions of the file, it returns them to the requestor. If the computer does not have portions of the file, it sends a request to other computers running the software.

Every computer that runs FreeNet in this manner can determine the IP address of a requesting computer, and an IP address can easily be traced to a particular person. Nothing about this process is anonymous. The government has at least one computer running

---

[2] The government's first argument is addressed in footnote 1.

FreeNet, and occasionally will receive requests for CSAM. It then uses a mathematical process to attempt to determine if the IP address requesting the CSAM files is the original requestor of the material, or simply a computer relaying another's request. Nothing about this process is secret. The government's process seems to be publicly available online and was published at an academic conference. *See* Brian Levine *et al*, *A Forensically Sound Method of Identifying Downloaders and Uploaders in Freenet*, November 2020, available at https://dl.acm.org/doi/pdf/10.1145/3372297.3417876.[3] The government's techniques were addressed in a public suppression hearing in Missouri, and the transcript is available to anyone with a PACER account. *See United States v. Alden Dickerman*, 4:16-CR-258 (E.D. Mo.). The law enforcement techniques the government claims should be kept secret are not secret and have not been for years. Subjecting all discovery to a protective order will not help advance the government's goals, and preventing Mr. Gray from having a copy of most of his discovery surely will not enable "other suspects to destroy evidence, evade justice, or even [modify FreeNet.]" FreeNet is an open-source software that can be edited by anyone, and FreeNet warns its users that their identity is not kept secret when they request files from others.

**The government's protective order is not necessary to protect the identities of victims or witnesses.**

A simple method to preserve the confidentiality of witness, victims, and juvenile is to subject any discovery containing any personal identifying information to a protective order. But discovery that does not include this information need not be subject to the same conditions. As an example, the government claims that Mr. Gray's admission to

---

[3] The government did not produce this information to the defense in discovery. Indeed, the government has not responded to—or even acknowledged—Mr. Gray's subsequent discovery request for this article.

conduct that occurred nearly twenty years ago somehow justifies a protective order in this case. However, the government's discovery did not contain *any information related to that alleged conduct*.[4] Nor does the discovery contain any information about the identities of any victims or witnesses. The government is right to want to protect the confidentiality of certain victim and witness information. That is why most cases have protective orders that specifically address such information. The defense's proposed order would do the same, provided the government actually discloses that information. To date, it has not.

**The government's protective order results in significant inefficiency and prejudice to the defense.**

The government's protective order prevents Mr. Gray from reviewing any of his discovery by himself. The discovery in this case comprises, at present, nearly four hundred pages, about a hundred of which is photographs (of the search warrant execution—not any CSAM). Although lawyers spend much of their career reading and writing, reviewing that discovery is time consuming. Discovery review for defendants is much more time consuming, as most defendants charged in federal court are not as familiar with legal documents and not as accustomed to reviewing them. Defense counsel simply does not have time to personally accompany Mr. Gray while he reviews discovery.[5]

The government correctly states that blanket protective orders are often used to facilitate the speedy production of discovery. But these orders are routinely modified later. Counsel has attempted to negotiate a modified protective order with the government, but the government has neither responded to nor acknowledged the defense's request. The

---

[4] One wonders, why? The government has been in possession of that information for three months and used that information to justify seeking Mr. Gray's detention.
[5] As discussed in Mr. Gray's objection to the protective order, the government's proposed method for incarcerated individuals is self-defeating and allows for disclosure to a party not bound by the protective order.

government claims the defense is engaging in "litigation solely for the sake of being litigious." *See* Resp. at 6 – 7. But the government's refusal to negotiate a mutually agreeable protective order is the cause of the instant litigation.

**Protective orders are unnecessary to minimize pretrial publicity.**

The rules of professional conduct adequately protect the jury pool from being tainted from public disclosures. *See* VA. R. Prof. Conduct 3.6. And were this a legitimate goal of the government's protective order, then why would the government insist that Mr. Gray not be able to possess a copy of his discovery even to prepare a claim under 18 U.S.C. § 2255—a proceeding that would occur long after any trial? Indeed, the inclusion of this provision in the protective order shows its true purpose: to minimize the ability of Mr. Gray to defend his case.

**Good cause exists to protect some items of discovery**

The party seeking a protective order has the burden of demonstrating that the requested relief is supported by good cause. *See*, *e.g.*, *United States v. Dixon*, 355 F.Supp.3d 1, 4 (D.D.C. February 8, 2019). Some information contained within discovery is sensitive and ought to be restricted solely to counsel and to employees of counsel's office or to those people hired by counsel in this case. Such information includes social security numbers, dates of birth, home addresses, and other personal contact information (phone numbers, emails, et cetera), and legally protected private information (such as grand jury information and tax returns). Other information, such as medical records, mental health records, or confidential sources of information, should also be protected.

The authority cited by the government supports limiting protective orders to information that implicates legitimate privacy concerns. *See id.* at 3 (discussing how the protective order applied only to body worn camera footage). The government has not found a single case to support its position, likely because no such case exists.

The defense proposes the court issue an order substantially similar to the protective orders that have been issued in the District Court for the District of Columbia, including for the hundreds of prosecutions of those charged in the January 6 insurrection. If that protective order is sufficient for cases in which the government charges that defendants attempted to subvert this country's very democracy, it ought to be sufficient here. The order distinguishes between information that is not sensitive, sensitive, and highly sensitive. It would allow an unincarcerated defendant the ability to posses all material but that which is designated highly sensitive, and would allow an incarcerated defendant the ability to review only that material whish is not designated as sensitive or highly sensitive.

Respectfully submitted,

/s/ Benjamin Schiffelbein
Asst. Federal Public Defender
NH Bar No. 267593
210 First Street SW, Room 400
Roanoke, Virginia 24011
Ph. (540) 777-0880
Fax (540) 777-0890
Benjamin_Schiffelbein@fd.org