IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | ) | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Action No. 7:22-cr-00001 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| JERALD GRAY, | ) | By:  Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendant. | ) | |

On January 31, 2022, Magistrate Judge Robert S. Ballou granted the Government's motion for a protective order in Defendant Jerald Gray's case and over his objection. (ECF No. 37.) He now seeks review of Judge Ballou's ruling under Federal Rule of Criminal Procedure 59(a). (ECF No. 40.) For the reasons below, the court finds that the Government has demonstrated good cause to protect the discovery materials in this case, and the court will affirm the entry of the protective order.

## I.   BACKGROUND

On January 13, 2022, the grand jury indicted Gray on one count of possession of child pornography. On January 26, the Government filed a "motion for voluntary disclosure of grand jury and other materials and for limitations on further disclosure," which asked the court to enter a protective order covering discoverable material in this case. (ECF No. 34.) That same day, Gray filed a response opposing the Government's motion and requested protective order. (ECF No. 35.) Judge Ballou granted the Government's motion on January 31 and entered the Government's proposed protective order ("the Order"). (ECF No. 37.) Gray filed objections to the Order, asking the court to review the determination under Federal Rule of

Criminal Procedure 59(a). (ECF No. 40.) The court directed the Government to file a response and held a hearing on March 1. (ECF Nos. 41, 63.) This matter is now ripe for review.

The Order is essentially a "blanket" protective order, in that it covers "any material provided by the United States Attorney's Office to defense counsel." (ECF No. 37, at ¶ 2.) Defense counsel may not copy any materials other than for use in this case, and none of the material may be removed from defense counsel's office unless it is in his personal possession. (*Id.* ¶ 4.) As an exception to those rules, however, defense counsel may make and leave copies of the materials with appropriate jail staff for Gray to review. (*Id.* ¶ 5.) Gray may not be in actual possession of the materials outside of the presence of his counsel or jail staff. (*Id.* ¶ 7.) For example, Gray could not review or store these materials in his cell.

The final paragraph of the Order provides the Government's justification for these protective measures: "Unauthorized disclosure of grand jury information and tax returns is a violation of federal law," and "[D]isclosure of any of the material could endanger witnesses, subject them to intimidation, chill their candor, violate their privacy, impede future investigations[,] and have other negative consequences." (*Id.* at 3.) Notably, while the Government highlights valid concerns about the disclosure of materials *generally*, nothing in the Order specifically indicates that disclosure of material in *this particular case* implicates those concerns. For example, the Order specifically mentions tax returns even though Gray's tax returns are almost certainly not at issue in this case. Gray contends the Order is "unnecessarily broad" and asks the court to "require the [G]overnment to specifically designate any sensitive information it believes should be subject to a protective order and limit the order to that information." (Def.'s First Obj. at 1 [ECF No. 37].)

After briefing by both parties, the court held a hearing on March 1, 2022. The parties clarified that the discovery materials at issue consist of approximately 380 pages of documents—115 of which are photographs of Gray's house that law enforcement officers took while executing a search warrant. The Government further represented that these photographs depict family photographs, photographs of minors, checkbooks, personal effects, and pictures of Gray's computer displaying the names of child sexual abuse material ("CSAM") files. The discovery materials also include FBI investigative reports including reports that memorialize Gray's inculpatory statements. These reports also elaborate on sensitive law enforcement methods related to "several local ongoing investigations involving the possession and receipt of child exploitative material using the same anonymizing computer software . . . ." (Gov.'s Resp. Br. at 4 [ECF No. 51].) And some of these investigative reports and Gray's statements also contain references to prior allegations against Gray involving minors, admissions of prior sexual misconduct against minors, and the identities of those minor victims.

The court considers Gray's objections to the protective order against the backdrop of the representations made by both parties in their briefs and at the hearing about the scope and nature of discovery in this case.

## II.   STANDARD OF REVIEW

Under Federal Rule of Criminal Procedure 59(a), "[a] district judge may refer to a magistrate judge for determination any matter that does not dispose of a charge or defense." Once a magistrate judge renders a decision on a referred matter, "[a] party may serve and file objections to the order within 14 days." *See id.* If a party timely objects, a district judge must

consider the objection "and modify or set aside any part of the order that is contrary to law or clearly erroneous." *See id.* The court referred the relevant non-dispositive motion to Magistrate Judge Ballou (*see* W.D. Va. Standing Order 2022-2), and Gray has filed a timely objection to the Order.

## III.   ANALYSIS

In a criminal case, a defendant has a limited right to discovery. The Government is constitutionally required to provide the defendant with so-called *Brady*[1] and *Giglio*[2] materials. The Jencks Act requires the Government to provide statements made by a government witness prior to any cross examination. 18 U.S.C. § 3500; Fed. R. Crim. P. 26.2. But, beyond these self-executing obligations, "[t]here is no general constitutional right to discovery in a criminal case . . . ." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977).

As a "matter of legislative grace," Congress crafted Federal Rule of Criminal Procedure 16 and imposed additional disclosure obligations on the Government (and on defendants) in a criminal case. *See Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 788 (1st Cir. 1988) (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 31–32 (1984)); *United States v. Smith*, 985 F. Supp. 2d 506, 521–22 (S.D.N.Y. 2013). Rule 16 requires that the Government provide a defendant with his own statements and criminal history and grants a defendant access to physical evidence and expert reports. *See* Fed. R. Crim. P. 16(a).

---

[1] Referring to *Brady v. Maryland*, 373 U.S. 83, 87 (1963), which requires the Government to disclose exculpatory information to a criminal defendant.

[2] Referring to *Giglio v. United States*, 405 U.S. 150, 153–55 (1972), which requires the Government to disclose information tending to impeach a Government witness prior to trial.

But under Rule 16(d), the court can issue protective orders to restrict or limit discovery, provided that "good cause" exists for so doing. *See id.* ("At any time the court may, for good cause, deny, restrict, or defer discovery . . . ."). These protective orders cannot be overly or unnecessarily broad. "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good[-]cause showing." *See United States v. Wecht*, 484 F.3d 194, 211 (3d Cir. 2007) (cleaned up). The party seeking the protective order has the burden of showing that disclosure of certain information "will result in a clearly defined, specific, and serious injury." *Smith*, 985 F. Supp. 2d at 523; *see United States v. Bulger*, 283 F.R.D. 46, 52 (D. Mass. 2012) ("Good cause . . . requires a particularized, specific showing."). The court has authority to modify protective orders on a case-by-case basis. *See Bulger*, 283 F.R.D. at 53; *United States v. Nardozzi*, No. 18-10017-GAO, 2018 WL 4571655, at *2 (D. Mass. Sept. 24, 2018).

To be sure, "blanket protective orders may be useful in expediting the flow of pretrial discovery materials," but "they are by nature overinclusive and are, therefore, peculiarly subject to later modification." *Pub. Citizen*, 858 F.2d at 790; *see Bulger*, 283 F.R.D. at 54 ("[B]lanket protective orders are more likely subject to modification than protective orders based upon a document[-]by[-]document review with a concomitant showing of good cause as to each document."). The Government relies, in part, on *United States v. Dixon*, 355 F. Supp. 3d 1 (D.D.C. 2019), to support its argument that the Order, as entered, sufficiently demonstrated good cause. But *Dixon* is inapposite, because there the court upheld a protective order that precluded public disclosure of and limited the defendant's ability to view a *specific* category of discoverable material—body-worn camera footage. *Id.* at *3. That court emphasized that the

Government had satisfied the good cause standard of Rule 16 because it provided "'particularized' and 'specific' examples of the sensitive data [it] seeks to protect." *Id.* at \*5 (citing *Bulger*, 283 F.R.D. at 52). In contrast, the Order in this case is a blanket protective order that covers all material provided by the Government to Gray, regardless of its nature or relative sensitivity.

In this case, the Government sought a protective order based on general assertions about the illegality of unauthorized disclosure of grand jury information and the potential risk of violating witness privacy and impeding law-enforcement efforts. The protections in the Order cover all material provided by the Government to defense counsel and the Order does not detail the specific types of materials at issue. The Government has since represented that the potential discovery materials include FBI investigative reports, photographs taken at Gray's home during the execution of a search warrant, and Gray's various statements to investigating officers.[3]

Gray does not contest the court's general authority to issue protective orders; he only contends that the Order, as entered, did not provide a sufficiently detailed description of the materials to be restricted and did not demonstrate good cause for restricting these materials. Defendant's counsel also registers concern about the COVID-19 risks involved in making

---

[3] Notably, Gray and his counsel are not requesting a copy of any of the alleged CSAM in this case. His counsel plans to "make alternative arrangements to review that material without taking possession of it." (Def.'s Second Obj. at 1 [ECF No. 40].) In any event, federal law prohibits the court from granting any request for the defendant to possess CSAM materials. *See* 18 U.S.C. § 3509(m)(2)(A) ("Notwithstanding Rule 16 of the Federal Rules of Criminal Procedure, a court shall deny, in any criminal proceeding, any request by the defendant to copy, photograph, duplicate, or otherwise reproduce any property or material that constitutes child pornography . . . , so long as the Government makes the property or material reasonably available to the defendant.") Both parties acknowledge the applicability of this law in this case.

frequent trips to spend several hours in jail with his client reviewing these materials. The court notes, however, that the Order permits defense counsel to leave materials at an appropriate location in the jail for Gray to review. This would allow Gray to review the materials in the presence of a jail officer, in addition to his counsel, and thus limit counsel's time spent in the facility.[4]

The court agrees with Gray that the protective order, as entered, was overly broad and unspecific. The order did not provide any categories and examples of discovery materials *tailored to Gray's case* and explain the good-cause basis for restricting Gray's access to those materials. *Smith*, 985 F. Supp. 2d at 530 ("[T]he absence of specific examples . . . leaves a gap in the record that prevents the [c]ourt from making a finding, either way, as to whether there is good cause to enter a protective order . . . . Without this information, the [c]ourt cannot determine, for example, how much weight to give to the interests of the third parties, whether redactions to the discovery might alleviate the Government's concerns, or instead, whether a blanket protective order would be the only way to protect the[se] interests . . . ."); *see United States v. McCaughey*, 534 F. Supp. 3d 132, 138–39 (D.D.C. 2021) (adopting the Government's proposed order that clearly delineated ten categories of information to restrict and finding that, although broad, the order was not a "blanket" protective order).

---

[4] Defendant's counsel represented at the hearing that he is not using this option to allow Gray to review discovery materials. Counsel cited concerns about leaving discovery materials in the hands of jail staff, who are not subject to the protective order. But counsel's choice not to avail himself of this option does not factor into the court's analysis of whether good cause exists to require certain protections on discovery materials. Moreover, courts routinely uphold protective orders that require counsel to be present when a defendant is reviewing materials—which is effectively the result for Gray. *See, e.g.*, *United States v. Cordova*, 806 F.3d 1085, 1090–91 (D.C. Cir. 2015); *United States v. Moore*, 322 F. App'x 78, 83 (2d Cir. 2009); *United States v. Fiel*, No. 3:10cr170-7, 2010 WL 3396803, *1 (E.D. Va. Aug. 25, 2010); *United States v. Pirk*, 281 F. Supp. 3d 342, 347 (W.D.N.Y. 2017). "[S]uch a limitation of dissemination to an incarcerated defendant would be nothing new." *United States v. McCaughey*, 534 F. Supp. 3d 132, 141–42 (D.C. Cir. 2021) (citing *United States v. Dixon*, 355 F. Supp. 3d 1, 7 (D.C. Cir. 2019)).

But, through briefing and at the hearing, the Government has specified the discovery materials relevant to this case and proffered good cause to protect and restrict those materials. The 115 pages of photographs of Gray's home depict a variety of sensitive and confidential materials, including photographs of minors, checkbooks, the titles of CSAM files, etc. The FBI and investigative materials contain information about ongoing investigations for possession of child pornography—which should be protected so as to not hinder the work of law enforcement. And these investigative reports also include the identity of certain victims, which should remain confidential. The risk of allowing Gray to maintain copies of documents containing this type of information while unaccompanied in a jail poses serious institutional security concerns.

The Government has not, however, proffered sufficient "good cause" for restricting Gray's access to his own statements. Defendant's counsel asks that Gray be allowed to possess a copy of his own statements in his jail cell at Western Virginia Regional Jail. Although the Government has not made a good-cause showing, Rule 16 empowers courts to enter a protective order "[a]t any time . . . for good cause . . . ." *See United States v. Corley*, No. 13-cr-48, 2016 WL 9022508, at *3 (S.D.N.Y. 2016) (quoting Fed. R. Crim. P. 16(d)(1)). The court finds that good cause exists to restrict Gray's statements under the Order.

Two primary considerations underlie the court's good cause finding: concerns for Gray's safety, and institutional security concerns. First, given the nature of Gray's charges and the contents of his statements, the court has very serious concerns about Gray's own safety and privacy. The court takes judicial notice of the fact that jails are dangerous environments

for individuals accused of a sexual offenses, particularly those involving children.[5] To allow loose documents detailing these type of accusations and events to be present in an unsecured part of the jail increases the risk that this information gets into the hands of other inmates, leading to potential violence and other forms of retaliation against Gray. Similarly, the court is concerned about the attendant security risks to jail staff and other inmates, as well as disruptions to normal security protocol. The court is also concerned that other inmates might access or obtain documents memorializing Gray's admissions about viewing child pornography and take steps to jeopardize the fairness and integrity of these criminal proceedings. Put simply, this kind of material would be fodder for jailhouse informants with malign intent. The court thus finds that these concerns satisfy Rule 16's good-cause requirement as to Gray's statements, and Gray has not demonstrated any significant prejudice that would outweigh these concerns. *See Dixon*, 355 F. Supp. 3d at 4 ("In determining whether good cause exists, courts have considered whether (1) disclosure of the materials in question would pose a hazard to others; (2) the defendant would be prejudiced by a protective order; and (3) the public's interest in disclosure outweighs the possible harm.").

In sum, the court finds that, based on the representations of the Government through briefing and at the hearing, good cause exists to impose the limitations on discovery under the Order. To the extent that Gray's objections to the protective order relate to the discovery

---

[5] *See* Michael S. James, *Prison is "Living Hell" for Pedophiles*, ABC News (Aug. 19, 2015), https://abcnews.go.com/US/prison-living-hell-pedophiles/story?id=90004 ("Child sex offenders are at risk of being murdered, having their food taken, having their cells defecated and urinated in . . . . Their life is truly a living hell."); *see also* Fed. Bureau of Prisons, https://bop.gov/inmates/custody_and_care/sex_offenders.jsp ("The Bureau recognizes sex offenders as a vulnerable population within a prison setting.") Though the court is well aware of and embraces the presumption of innocence afforded *all* criminal defendants, other inmates may not recognize the distinction between being charged of a crime and being convicted of one.

materials the Government has indicated it intends to produce, the objections will be overruled.
The Government will be directed to file a notice on the docket, specifically naming the
discovery materials at issue in this case—consistent with what it stated at the hearing on March
1. The scope of the protective order will be limited to those materials described in that notice.[6]
If the Government wishes to expand that scope at any time, it must file a motion on the docket
explaining the relevant category of discovery material and the good cause that warrants
imposing the restrictions in the Order.

      The clerk is directed to send copies of this Memorandum Opinion and accompanying
Order to all counsel of record.

      **ENTERED** this 18th day of March, 2022.

          */s/ Thomas T. Cullen*
          HON. THOMAS T. CULLEN
          UNITED STATES DISTRICT JUDGE

---

[6] Going forward, the court expects that the Government will tailor its proposed protective orders to the specific types of discovery at issue and the attendant justifications for restricting those materials.