IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )  Case No. 7:22-CR-00001 |
| | ) |
| JERALD FRANCIS GRAY | ) |

## SENTENCING MEMORANDUM

The United States of America, by and through its attorneys, hereby submits its sentencing memorandum and respectfully requests, for the reasons set forth below, that the Court sentence defendant Jerald Gray to an above-Guidelines sentence of 144 months, to be followed by 25 years of supervised release.

## BACKGROUND

On or about July 3, 2021, Mr. Gray used Freenet, a peer-to-peer filesharing software, to download a video approximately nine minutes in length depicting a naked prepubescent girl under twelve years of age performing oral sex on an adult male. Statement of Facts, at 1 (ECF No. 92). Just over a month later, Mr. Gray again used Freenet, this time to download two more videos containing child sexual abuse material ("CSAM"). *Id.* One video is close to ten minutes in length and depicts an adult male sitting atop a prepubescent girl under twelve years of age while the man masturbates and the child uses her mouth and hands to perform various sexual acts on the man's genitals. *Id.* The second video is close to eleven minutes in length and depicts a naked prepubescent girl under twelve years of age engaging in various sexual acts with an adult male. *Id.* The man performs oral sex on the child, the child performs oral sex on the man, and the man touches his penis to the child's genitals. *Id.*

Based on this information, law enforcement executed a search warrant on Mr. Gray's computer and one of his cell phones. *Id.* at 1, 2. In searching the computer, law enforcement located not only the three aforementioned videos that had been downloaded from Freenet, but also located fifty-two other videos containing CSAM, as well as ten images containing CSAM. *Id.* at 1; PSR[1] ¶ 20 (ECF No. 101). At least two of the videos exceeded five minutes in length. PSR ¶ 20. In searching Mr. Gray's phone, law enforcement located eleven images[2] containing CSAM. PSR ¶ 20. After he was arrested, Mr. Gray admitted to law enforcement that he had been viewing CSAM for approximately fifteen to twenty years. PSR ¶ 15.

The Government is also aware of information that, while not considered relevant conduct, is important for the Court to consider when crafting a sentence that takes into account the § 3553(a) factors. In June 2005, a 12-year-old girl who was friends with Mr. Gray's daughter reported to the Covington Police Department that, while she was sleeping over at the Grays' house, Mr. Gray had kissed her breasts and grabbed her buttocks while she was asleep. PSR ¶ 41. No charges were ultimately filed. PSR ¶ 42.

After Mr. Gray's arrest in the instant matter, he was questioned about the allegations that had been lodged against him in 2005. PSR ¶ 41. After initially denying and minimizing the incident, he admitted to kissing the girl's breasts and said it was possible that he had touched her buttocks. PSR ¶ 42. Mr. Gray also admitted to purposefully touching the breasts of a second victim, a 14-year-old girl who would babysit his kids and help with household chores. PSR ¶ 42. Mr. Gray

---

[1] Cites to the PSR are based on the draft PSR. The final PSR was not yet filed at the time of filing.

[2] The statement of facts erroneously states that the cell phone contained eleven videos. The Government realized while the PSR was being prepared that this was an error. In actuality, the phone contained eleven *images*, which appear to be screenshots from an infamous CSAM video series. The Government expects that this error will be corrected in the final PSR.

stated that, on several occasions in 1995, he would wrestle with this girl and would touch the girl's breast and leave his hand on it for a minute or two.[3] PSR ¶ 42.

On January 13, 2022, a grand jury in this District returned a one-count indictment charging Mr. Gray with possession of child pornography depicting minors under the age of twelve, in violation of 18 U.S.C. § 2252(a)(4)(B), (b)(2). Indictment (ECF No. 27). On January 12, 2023, Mr. Gray pleaded guilty to Count One of the Indictment. Minute Entry (ECF No. 94).

## GUIDELINES CALCULATION

The PSR properly calculated the guideline range to be 97-121 months based on a total offense level of 30 and a criminal category of I. The PSR outlines two potential bases for upward departures, the fact that Mr. Gray possessed videos that are substantially longer than five minutes and that the number of images he possessed substantially underrepresents the number of minors depicted. PSR ¶¶ 88–89 (citing U.S. Sentencing Guidelines § 2G2.2, n.6(B)(i), (ii) (2021)).

The offense to which Mr. Gray has pleaded guilty carries a requires a term of supervised release of at least five years with a maximum term of life. 18 U.S.C. § 3583(k).

## RESTITUTION

To date, two of the three identified victims have submitted restitution requests. One of the restitution requests is attached to the PSR. The Government expects that the second restitution request will be attached to the final PSR, and it is also being separately emailed to the Court. Negotiations with counsel regarding these requests are ongoing, although they cannot be less than $3,000 each.

---

[3] Mr. Gray estimated that these instances of molestation occurred in 1995 when he was twenty-one. PSR ¶ 42. But, if they did occur in 1995, he would have been twenty-two or twenty-three. See PSR at 4.

3

## LEGAL STANDARD

In determining the appropriate sentence to be imposed upon the defendant, the Court must consider the factors set forth in 18 U.S.C. § 3553(a). These factors require the Court to consider "the nature and circumstances of the offense and the history and characteristics of the defendant[.]" 18 U.S.C. § 3553(a)(1). The Court must also consider the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "to afford adequate deterrence to criminal conduct"; "to protect the public from further crimes of the defendant"; and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." *Id.* §3553(a)(2). The other important § 3553(a) factors that the Court must consider are the kinds of sentences available, the Sentencing Guidelines range, any pertinent policy statement issued by the Sentencing Commission, "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," and the need to provide restitution to any victims. *Id.* § 3553(a)(3)–(7).

With respect to the Guidelines range, although application of the Guidelines is no longer mandatory, *see United States v. Booker*, 543 U.S. 220, 245 (2005), the Guidelines still play a "central role" in the sentencing decision, *Molina-Martinez v. United States*, 578 U.S. 189, 199 (2016). Indeed, in most instances, "the Guidelines are not only the starting point . . . but also the lodestar." *Id.* at 200.

In child exploitation cases, a variant sentence above the Guidelines range is warranted where "the court finds that there exists an aggravating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b)(2)(A)(i).

4

In this case, the most pertinent § 3553(a) factors, each of which will be addressed in greater detail below, are: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (4) the need to afford adequate deterrence to criminal conduct; and (5) the need to protect the public from further crimes of the defendant.

## ARGUMENT

### A.  Nature and Circumstances of the Offense

The nature and circumstances of Mr. Gray's offense demonstrate his lifelong exploitation of children and his deliberate participation in a community that perpetuates the harm suffered by children victimized and exploited for the sadistic pleasure of uncaring adults. Mr. Gray knew that his consumption of CSAM was illegal, which is why he used Freenet, a peer-to-peer file-sharing network designed to promote the anonymous exchange of files and to make it extremely difficult for its users to be identified. *See* United States' Mem. in Resp. to Def.'s Mot. to Suppress 1–3 (ECF No. 85). Despite his knowledge that his behavior was illegal, Mr. Gray has been accessing CSAM for decades. And through his use of Freenet, he has consciously and repeatedly chosen not only to consume it, but to trade it over the internet, spreading these horrific images and, thereby, re-victimizing real children by distributing the permanent depictions of their abuse

Although Mr. Gray has pleaded guilty solely to possessing child pornography on one particular date, the evidence collected from his devices and his admissions make clear that his conduct on this particular date was not an aberration or an isolated mistake. Rather, he has engaged in this behavior for decades.

As a part of the offense, it is notable that Mr. Gray possessed multiple videos (fifty-five) depicting CSAM, several of which were lengthy. For example, he possessed videos that were approximately nine, ten, eleven, and fourteen minutes in length. PSR ¶¶ 10–11, 19. The number and length of these videos warrant an upward departure. Were Mr. Gray's offense level increased by one level to account for such an upward departure, his guideline range would be 108-135 months.[4]

**B.      History and Characteristics of the Defendant**

Mr. Gray's history and characteristics are mostly unremarkable. He appears to have had the good fortune of a relatively normal upbringing—a "good" upbringing, to use his words—as a part of a loving family. PSR ¶¶ 56–57. Mr. Gray parlayed a high school education and some college into a good job. PSR ¶¶ 63–64. He does not have any mental health issues or substance abuse issues, and he makes no allegation that he was previously a victim of abuse. PSR ¶¶ 57, 61–62. Such issues are, unfortunately, frequently present in child exploitation cases, and the fact that Mr. Gray has such an unremarkable economic, social, and medical history indicates that there is nothing in his history that would weigh in favor of mitigation.

On the contrary, Mr. Gray's history weighs in favor of an upward variance. Mr. Gray has admitted to groping two young girls. He was in a position of authority with respect to both of those girls, one being his daughter's friend and the other being his household employee. He abused that position of authority to molest these two girls, and he did so in ways that he thought he could get away with. In the case of one girl, he molested her while she was sleeping. In the case of the other,

---

[4] Probation identifies two bases for an upward departure. It is the Government's position that it is not warranted to depart upwards based on both the number of images *and* the length of the videos, given that the image calculation is primarily based on the number of videos that Mr. Gray possessed. Although the number of videos is, of course, distinct from their length, the number of images and videos possessed by Mr. Gray is not extraordinarily large in the context of other similarly-situated offenders; it is unfortunately not uncommon for offenders to have many more images and videos than were found on Mr. Gray's devices. A one-level upward departure is sufficient to account for both the number and length of the videos.

6

he molested her under the guise of an accidental touch during bizarre and inappropriate wrestling sessions, where he purposefully did not touch her below the waist because he felt that it was too risky. This conduct warrants an upward variance.

C. **The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense**

The harm caused by Mr. Gray's behavior is substantial and tangible. Two of the identified victims in this case have submitted victim impact statements explaining how much the conduct committed by Mr. Gray and others has harmed them.

"Lily" (of the "Vicky" series) has explained the harm that Mr. Gray has perpetuated:

> I live everyday [sic] with the horrible knowledge that many people somewhere are watching the most terrifying moments of my life, and taking grotesque pleasure in them. I am a victim of the worst kind of exploitation: child pornography. Unlike other forms of exploitation, this one is never-ending. Everyday [sic] people are trading and sharing videos of me as a little girl being raped in the most sadistic ways. They don't know me, but they have seen every part of me. They are being entertained by my shame and pain.

Lily Victim Impact Statement, at 1.[5] Lily also describes what CSAM actually represents: "[W]e are not talking about an object or an image; we are talking about little children, like I was, being abused. It's real and it becomes a life-long battle. *Id.* at 3.

"Jen" (of the "JBN Flowers" series) is still only a child. But her guardian ad litem has submitted a victim impact statement on Jen's behalf. Her guardian ad litem describes how "Jen's self-image has been negatively impacted by the abuse she has experienced." Jen Victim Impact Statement, at 1 (ECF No. 101, PageID#s 415–16). The guardian ad litem also describes how "Jen will require years of therapy to have any hope of recovering from the psychological trauma caused

---

[5] The Government expects that Lily's victim impact statement and restitution request will be attached to the final PSR. They are also being separately emailed to the Court.

7

to her by sexual abuse and continued exploitation of her child sexual abuse images by individuals who receive, share and distribute those images." *Id.* at 2.

"The demand for child pornography harms children in part because it drives production, which involves child abuse. The harms caused by child pornography, however, are still more extensive because child pornography is 'a permanent record' of the depicted child's abuse, and 'the harm to the child is exacerbated by its circulation.' " *Paroline v. United States*, 572 U.S. 434, 439–40 (2014) (quoting *New York v. Ferber*, 458 U.S. 747, 759 (1982)); *see United States v. Burgess*, 684 F.3d 445, 459 (4th Cir. 2012) ("It is well established that children featured in child pornography are harmed by the continuing dissemination and possession of that pornography."). The harm suffered by victims of child pornography offenses is well supported by medical and social science. *See Ferber*, 458 U.S. at 759–60 & nn. 9–10 (collecting authority). And, as both of these victim impact statements make clear, Mr. Gray's internet-facilitated sexual exploitation of children is a serious offense that has caused lifelong harm to his victims.

Moreover, the difficulties in quantifying Mr. Gray's proportional contribution to the harm suffered by these victims fails to justify a lesser sentence. This argument would, at its core, be a request for leniency because Mr. Gray is but one of many criminals who traffic in CSAM. And each perpetuates and exacerbates the harm caused by the initial abuse. *See Paroline*, 572 U.S. at 439–40.

The harm suffered by these two victims, as well as the other victims who either did not submit a victim impact statement or were not identified, shows the seriousness of Mr. Gray's crimes. *See, e.g.*, *United States v. Pugh*, 515 F.3d 1179, 1202 (11th Cir. 2008) ("[W]e have typically treated child sex offenses as serious crimes, upholding severe sentences in these cases"); *United States v. Guerra*, 535 F. App'x 214 (4th Cir. 2013) (per curiam) (affirming 120-month

8

sentence—the statutory maximum—for possession of child pornography). Given the seriousness of this crime, a significant sentence is needed to promote respect for the law and to provide just punishment for the offense.

D.     **The Need to Afford Adequate Deterrence to Criminal Conduct**

A significant sentence in this case is necessary to afford adequate specific as well as general deterrence. In the case of specific deterrence, Mr. Gray has engaged in the charged conduct for decades, viewing and trading a significant quantity of CSAM, no doubt, as well as committing multiple contact offenses for which he has never been charged.

General deterrence, too, is a very important consideration in considering an appropriate sentence. *See, e.g.*, *Osborne v. Ohio*, 495 U.S. 103, 109-10 (1990) ("It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand."); *Ferber*, 458 U.S. at 760 ("The most expeditious if not the only practical method of law enforcement may be to dry up the market for [CSAM] by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product."); *United States v. Goff*, 501 F.3d 250, 261 (3d Cir. 2007) ("[D]eterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing . . . ."); *United States v. Barevich*, 445 F.3d 956, 959 (7th Cir. 2006) ("Transporting and receiving child pornography increases market demand. The greater concern under the Guidelines is for the welfare of these exploited children. The avenue Congress has chosen to weaken the child pornography industry is to punish those who traffic in it.").

E.  **The Need to Protect the Public from Further Crimes of the Defendant**

Unlike in some cases involving defendants convicted of possession or receipt of child pornography, Mr. Gray has a history of contact offenses that establishes that he is a danger to children. It appears that he only stopped committing such offenses because his access to children of his desired age diminished. *See* PSR ¶¶ 44 ("Gray advised that eventually the victim grew older and stopped coming over to his house. Gray advised that he did not have any sexual contact with the other female that would come over with the victim, because the other female was "older."), 46 (noting how another teenage friend of Gray's daughter—on whom Gray fixated—stopped visiting the home after his daughter left home).[6]

However, it appears that Mr. Gray will again soon have access to girls in the demographic to which he is attracted. Mr. Gray has a stated sexual preference for young girls in their early teens who are "developed," PSR ¶ 15, and the victims of his prior contact offenses were twelve and fourteen, PSR ¶¶ 41, 44. Prior to being arrested, Mr. Gray was living with his daughter and his eight- and nine-year-old granddaughters. PSR ¶ 58. Those granddaughters are a little over a year older now. And, within the next few years, they (and their friends) will reach the age range that will put them most at risk. A substantial prison term is also necessary to protect these girls and other potential victims of Mr. Gray.

## CONCLUSION

For the reasons stated above, principally Mr. Gray's graphic collection of CSAM and his prior contact offenses, the Government respectfully requests that this Court upwardly depart one

---

[6] It is of no moment that Mr. Gray has not been charged with these prior contact offenses. A sentencing court may properly consider uncharged—and even acquitted—conduct. *United States v. Grubbs*, 585 F.3d 793, 798–99 (4th Cir. 2009). It is only the case that that conduct need be proven by a preponderance of the evidence. *Id.* Mr. Gray's confession—and, in the case of Mr. Gray's daughter's friend, her police report—are sufficient evidence to establish that these crimes occurred.

level and then vary upwards to sentence Mr. Gray to a term of imprisonment of 144 months, to be followed by a 25-year term of supervised release.

Respectfully submitted,

CHRISTOPHER R. KAVANAUGH
United States Attorney

/s/ Jason M. Scheff
Jason M. Scheff
Assistant United States Attorney
New York Bar No. 5188701
United States Attorney's Office
310 First Street, SW, 9th Floor
Roanoke, Virginia 24011
540-857-2250
Jason.Scheff@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2023, I caused to be filed this sentencing memorandum with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

s/Jason M. Scheff
Assistant United States Attorney
