IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

United States of America

      v.　　　　　　　　　　　　　　　　Docket No. 7:22-CR-1-TTC

Jerald Francis Gray

Defendant's Sentencing Memorandum

Few criminal acts raise as much opprobrium as the possession of child sexual abuse images. But Mr. Gray's conduct and history are unremarkable among the class of people convicted for such behavior. On the scale of similar crimes, Mr. Gray's conduct was relatively minor in that he possessed far fewer images than most. And Mr. Gray did not distribute or manufacture any such images or content, nor did he profit from their creation. Nor does Mr. Gray have a history of convictions for such behavior, and apart from an untested abuse allegation and a marijuana conviction, he has lived a law-abiding life. Mr. Gray requests that the court vary below the guidelines and impose a sentence of twenty-four months, which is consistent with a guideline calculation that does not enhance Mr. Gray's conduct multiple times for the same aspects of his crimes. Because the guidelines are correctly calculated, Mr. Gray argues these are not objections to the report, but are reasons that the court should vary from the guidelines and impose a lower sentence.

It would be easy for the court to impose a lengthy sentence on Mr. Gray and hope that, in so doing, the court will act consistent with justice. But a lengthy sentence would do little to accomplish the goals of punishment and would

needlessly incarcerate someone who can easily be monitored in society to ensure the safety of the community. What is more, a lengthy sentence would appease many actors in the criminal legal system and may bring some small measure of comfort to the victims, but would not deter others or have any effect on this country's (and the world's) larger crisis of child sexual abuse material easily available and freely traded online.

The internet is awash in child sexual abuse material. In 2018, technology companies reported more than 45 million images traded online, which I likely a fraction of the total images being distributed throughout the web. *See* Michael H. Keller and Gabriel J.X. Dance, *The Internet is Overrun with Images of Child Sexual Abuse. What Went Wrong?*, New York Times, Sept. 29, 2019 available at https://www.nytimes.com/interactive/2019/09/28/us/child-sex-abuse.html. Since that reporting, many technology companies have striven to cut this number. And yet the number of reports of such images has nearly doubled since 2018—then just over 18 million such reports were filed. Last year more than 32 million reports were submitted. *See* WBUR, *Child sexual abuse material is on the rise online. Will lawmakers and big tech finally act?* On Point, NPR, February 16, 2023, transcript available at https://www.wbur.org/onpoint/2023/02/16/the-rise-of-child-sex-abuse-material-and-what-lawmakers-and-the-tech-industry-can-do-to-stop-it.

Sentencing Mr. Gray to a significant term of imprisonment will have no meaningful effect on the millions of images circulating online. The length of Mr. Gray's term of imprisonment is inconsequential to the market for such images. But

this is not to say that a lengthy term of imprisonment has no support in the goals of punishment, as doing so will impose a significant punishment for Mr. Gray's actions. But what role should retribution play in punishing an individual who viewed the sexual exploits of others? His conduct was reprehensible, but how responsible can he be said to be for the known and unknown harm caused by his actions? The known harm is felt by the identified victims who are notified that, yet again, their abuse has been exploited for the gratification of others. The unknown harm is borne by the unidentified victims and felt by the known victims even when they are not notified of further criminal charges. In each case, Mr. Gray's actions were a small part of a much larger system, and the harm he directly caused pales in comparison to the greater harm inflicted by this growing crisis. Effective punishment in such cases is that people be imprisoned for the harm caused by their actions, but the amount of imprisonment ought to be commensurate with the harm.

      The most troublesome aspect of Mr. Gray's past is something that this court ought not to consider in fashioning a sentence: that he was accused of molesting a child nearly thirty years ago, and that this accusation was corroborated by Mr. Gray's recent confession. Mr. Gray's confession ought to be viewed in the context in which it occurred. He was being interrogated by police and was accused of serious crimes. Admitting to dated conduct could be seen as mitigating and strengthening his credibility while not appearing to expose him to more criminal liability. And Mr. Gray's confession largely parroted the accusation's structure but was not

sufficiently detailed—which might be a product of the fact that the act allegedly occurred nearly three decades ago.

He only other troublesome aspect of Mr. Gray's past is his admission to viewing this material over the past decade. But it is the rare defendant who is caught with his first and only foray into child sexual abuse material. Sadly, most are caught well into their conduct, and Mr. Gray is no exception. The silver lining to this fact is that Mr. Gray has never received treatment, and the court should presume that the treatment offered and required by its Probation Office will effectively treat Mr. Gray's behavior. If the treatment were not effective, the court would not require it and probation would not scrupulously ensure that defendants receive it.

Several guideline enhancements inflate Mr. Gray's recommended sentence without meaningfully relying on aggravating factors. For instance, the fact that Mr. Gray used a computer increases his recommended sentence by two points, even though the vast majority (and almost all) of cases of child sexual abuse material involve the use of computers. Mr. Gray also receives two enhancements for the inclusion of children under the age of twelve—both a two point enhancement and a four-point enhancement for the necessarily-true finding that sexual abuse of a prepubescent minor involves the infliction of pain. And Mr. Gray receives a significant increase to his guidelines because he possessed lengthy videos of child sexual abuse material, even though Mr. Gray only actually possessed fewer than one hundred files containing such material. In total, these aggravating factors

increase Mr. Gray's recommended sentence nearly three-fold. Mr. Gray requests that the court consider that an appropriate sentence would account for a two-level increase for the inclusion of children under the age of twelve and a two-level increase for having more than ten but fewer than one hundred and fifty images. That adjusted offense level would result in a recommended range of 30 – 37 months of imprisonment.

Nearly twenty percent of defendants charged with possessing images of child sexual abuse material receive sentences of less than sixty months of imprisonment. The figure below was taken from the Sentencing Commission's JSIN data after including all defendants convicted using the 2G2.2 guideline.



**Distribution of Imprisonment Length**
Fiscal Year 2021

- Up to 24 Months 7.3%
- 24 to 59 Months 11.2%
- 60 to 119 Months 40.4%
- 120 Months or More 41.2%

The figure includes the 1,198 cases reported to the Commission. Cases missing information necessary to complete the analysis were excluded from this figure.
**FILTER:**
Fiscal Year: 2021; Circuit: All; State: All; District: All; Race: All; Gender: All; Age: All; Citizenship: All; Education: All; Crime Type: All; Guideline: §2G2.2; Drug Type: All; Sentencing Zone: All; Criminal History: All; Career Offender Status: All

And of defendants who have a criminal history category of I and an adjusted offense level of thirty, nearly three quarters receive a downward departure or variance.



Note: The figure includes the 872 defendants reported to the Commission whose primary guideline was §2G2.2, with a Final Offense Level of 30 and a Criminal History Category of I, including defendants who received a §5K1.1 substantial assistance departure. Cases missing information necessary to complete the analysis were excluded from this figure. Defendants who received a §5K1.1 substantial assistance departure are included in this analysis but are excluded from other analyses below. As such, the number of defendants included in this analysis may exceed the number of defendants in other analyses. Total percentages displayed in the figure may not sum to 100% due to rounding.

The resulting average and median sentence length for similarly situated defendants is seventy months. Mr. gray requests a sentence below that because of his demonstrated ability to follow the law and the ability of available treatment to effectively protect the safety of the community. Because Mr. Gray has not received treatment for his sexual behavior, this court should assume that the available treatment will work. His otherwise law-abiding life demonstrates that he can be safely monitored in the community without requiring a lengthier sentence of imprisonment.

     Mr. Gray requests this court order him to pay restitution of $6,000--$3,000 to each identified victim in his case. Though this amount cannot account for the harm done to each child, it can help to repair some of the harm Mr. Gray caused by downloading and viewing material capturing horrific moments in their past.

Respectfully submitted,

/s/ Benjamin Schiffelbein
210 First Street SW, Ste 400
Roanoke, VA 24011
Benjamin_Schiffelbein@fd.org
540 777 0880