IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| v. | )   Case No. 7:22-CR-00001 |
| | ) |
| **JERALD FRANCIS GRAY** | ) |

### MEMORANDUM REGARDING RESTITUTION

The United States of America, by and through its attorney, hereby submits the following brief pertaining to the appropriate restitution payment that should be ordered in this case.

### LEGAL BACKGROUND

When a defendant has been convicted of possessing child pornography, the court "shall order restitution" by first "determin[ing] the full amount of the victim's losses that were incurred or reasonably projected to be incurred by the victim as a result of the trafficking in child pornography depicting the victim." 18 U.S.C. § 2259(b)(2)(A). "After completing [that] determination . . . the court shall order restitution in an amount that reflects the defendant's relative role in the causal process that underlies the victim's losses, but which is no less than $3,000." *Id.* § 2259(b)(2)(B).

In a child pornography case, the " 'full amount of the victim's losses' includes any costs incurred, or that are reasonably projected to be incurred in the future, by the victim . . . as a proximate result of all trafficking in child pornography offenses involving the same victim, including (A) medical services relating to physical, psychiatric, or psychological care; (B) physical and occupational therapy or rehabilitation; (C) necessary transportation, temporary housing, and child care expenses; (D) lost income; (E) reasonable attorneys' fees, as well as other costs incurred; [and] (F) any other relevant losses incurred by the victim." *Id.* § 2259(c)(2).

The issuance of a restitution order in a child pornography case is mandatory, although "[a] victim's total aggregate recovery . . . shall not exceed the full amount of the victim's demonstrated losses." *Id.* § 2259(b)(4)(A), (b)(2)(C). A victim is no longer entitled to restitution once she "has received restitution in the full amount of [her] losses as measured by the greatest amount of such losses found in any case involving that victim that has resulted in a final restitution order." § 2259(b)(2)(C).

It is the Government's burden to demonstrate "the amount of the loss sustained by a victim as a result of the offense." *Id.* § 3664(e). And any restitution disputes are to be resolved by the court using a preponderance of the evidence standard. *Id.*

## PROCEDURAL BACKGROUND

In this case, two victims have made restitution requests, one going by the pseudonym "Lily" and the other by the pseudonym "Jen." Lily has claimed a total loss amount of $6,008,536.29, excluding attorney's fees, and she has requested that Mr. Gray pay her $10,000 in restitution. ECF No. 104-2, at 1–2. Jen has claimed at least $192,000 in losses, taking into account the cost of twenty years of therapy. ECF No. 104-1, at 6.[1] And she has requested restitution in the amount of $10,000. ECF No. 104-1, at 1.

On December 7, 2022, the Court ordered the parties to "meet and confer regarding the appropriate amount of restitution that should be made to each identifiable victim . . . [and], in the event the parties [were] unable to reach agreement . . . to explain and justify in their written sentencing memoranda, their respective positions on the appropriate amount of restitution . . . ."

---

[1] Jen undoubtedly has other compensable losses, such as lost income. Her attorney has informed the Government that a vocational/economic loss evaluation has not yet been conducted for Jen due to the trauma such an evaluation can trigger, as well as due to the expense. In addition, as Jen's therapist acknowledges, she may also require more than twenty years of therapy. Because Jen has not provided an accounting to the Government or to the Court of any additional losses, the Government assumes that the full amount of Jen's losses is $192,000 at this point in time, with recognition that this amount is an undervaluation.

2

Apr. 5, 2023 Order (ECF No. 100). The parties subsequently conferred and, after defense counsel consulted with his client and the Government consulted with counsel for the victims, on June 2, 2023, the parties came to an agreement, agreeing to recommend to the Court that Mr. Gray be ordered to pay each victim the $3,000 minimum outlined in § 2259(b)(2)(B), for a total restitution order of $6,000.

On June 5, 2023, the Court ordered the parties to file supplemental memoranda addressing particular matters pertaining to the restitution calculations for each of the two victims in this case. June 5, 2023 Order (ECF No. 110).

## ANALYSIS

### A. The Full Amount of Lily's Losses

Lily has claimed a total loss amount of $6,008,536.29 (excluding attorney's fees). This was previously calculated as Lily's total loss amount by a court in the District of Massachusetts. *See United States v. Smith*, 4:22-cr-40006 (D. Mass. Apr. 6, 2023) (ECF No. 100) (docket entry attached as Gov't Ex. 1). Pursuant to § 2259(b)(2)(C), this number—at the very least[2]—is the measuring stick for determining whether Lily has received full restitution. And defendants' restitution liability does not terminate until Lily has received restitution in at least that amount. *See* § 2259(b)(2)(C).

The Government recognizes that the Court has raised questions as to whether Lily's claimed medical losses are speculative. June 5, 2023 Order (ECF No. 110), at 2–3 (citing *United States v. Erickson*, 388 F. Supp. 3d 1086, 1095–96 (D. Minn. 2019) and *United States v. Richardson*, No. 1:13-CR-00686, 2022 WL 17338274, at *11 (N.D. Ill. Nov. 30, 2022)). It may be true that Dr. Cooper's report is "somewhat imprecise" and "somewhat speculative." *See United*

---

[2] It may be the case that Lily's losses have been found to be higher by another court, but this is the largest figure of which the Government is currently aware.

3

*States v. Arce*, 49 F.4th 382, 396 (4th Cir. 2022). "But calculating . . . restitution is an inherently imprecise task." *Id.* And while "it may seem unusual to call this 'restitution' given the imprecise nature of the payment and the hazy causal relation of the offense to the harm suffered . . . some form of financial compensation is required by statute . . . ." *Id.*

Importantly, in calculating Lily's loss figure, while precision may be the aspiration, it is not a prerequisite. *See id.* ("Fashioning appropriate restitution remedies for child-pornography victims is not 'a precise mathematical inquiry and involves the use of discretion.' " (quoting *Paroline v. United States*, 572 U.S. 434, 459 (2014))); *United States v. Dillard*, 891 F.3d 151, 160 (4th Cir. 2018) ("This approach does not require a 'precise algorithm for determining the proper restitution amount.' " (quoting *Paroline*, 572 U.S. at 459–60)); *United States v. Johnson*, 680 F. App'x 194, 200 (4th Cir. 2017) ("[A]bsolute precision is not required when calculating the proper amount of restitution."). "Rather, the government must establish the amount of the victim's loss with reasonable certainty." *Johnson*, 680 F. App'x at 200 (internal citations omitted). Indeed, the Mandatory Victims Restitution Act ("MVRA") (as modified by the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018) specifically outlines that a victim's future losses need only be *reasonably* projected to occur in the future, *see* § 2259(c)(2), and the Court need only find that this reasonable projection is more likely true than not, *see* § 3664(e). In light of Dr. Cooper's declaration and in light of Lily's extensive trauma and overall poor health, the Government submits that Dr. Cooper's calculations are reasonable projections with regard to Lily's future medical expenses and that these expenses are reasonably related to Lily's trauma.[3]

---

[3] It is also notable, as Dr. Cooper notes, that inflation and increasing medical costs mean that extrapolating these present costs many years into the future actually *undercalculates* Lily's future medical costs. *See* ECF No. 104-3, at 19–28.

This is especially true in the context of the new version of the MVRA, which made two significant changes, as relevant here. First, in revising the statute, Congress decided that a victim's losses need only be "reasonably projected." Second, Congress took some of the guesswork out of things by deciding that—so long as a victim had suffered compensable losses, and so long as a victim had not obtained full restitution, as measured by the greatest amount of loss found in any case involving that victim—a statutory minimum restitution award of $3,000 must be awarded to victims of child pornography offenses.

*Erickson* and *Richardson* both rely on the old version of the MVRA, which contained different language and did not provide for this $3,000 minimum payment (once a victim is found to have suffered a compensable loss). *See United States v. Richardson*, Case No. 1:23-cr-00686, 2023 WL 35160, at *5 (N.D. Ill. Jan. 4, 2023); *Erickson*, 288 F. Supp. 3d at 1088 & n.1. As a result, the congressional determination that once a victim has suffered a compensable loss she is entitled to at least $3,000 supersedes the reasoning in *Erickson* and *Richardson*.

These courts also found that Lily's medical expert had provided a deficient explanation for her calculations in which she used, in at least some instances, inaccurate information. *See Richardson*, 2023 WL 35160, at *9; *Erickson*, 288 F. Supp. 3d at 1094–95. But it appears that these courts relied on a different report than was put forward by Lily in the present case.[4]

While it is true that Dr. Cooper appears to rely on Lily's lifetime medical costs in total, rather than the amount of increased medical costs caused by her trauma's exacerbation of her conditions, *see Richardson*, 2023 WL 35160, at *9, the difficulty here is that it seems impossible

---

[4] The medical expert on which Vicky relies supplemented her report on April 13, 2020. *See* ECF No. 104-3, at 16–33. This obviously post-dates *Erickson*, a 2019 decision. And while *Richardson* is more recent, the numbers used in that opinion make clear that that court relied on a different version of the report than is presented here. For example, the *Richardson* court referenced asthma and migraine costs of $10,280 and $7,007 per year, respectively, 2023 WL 35160, at *9, while Dr. Cooper's current report estimates those respective annual costs to be $8,706 and $8,924.

to disaggregate these expenses. As Dr. Cooper explains in her most recent report, "it is true more probably than not that [Lily's] overall poor health . . . is a result of the toxic levels of cortisol and other stress hormones constantly pumped into her system." ECF No. 104-3, at 17. So it may well be that she would not have developed this amalgamation of conditions but for the collective trauma that she has suffered.

Notably, a number of courts have not challenged Lily's claimed losses, and she has been ordered restitution in at least 1,380 cases, including 14 previous cases in this district and at least 31 in the months since *Erickson* was decided. *See* Gov't Ex. 2 (filed under seal).[5] At least one case has specifically considered Lily's medical calculations and considered—and rejected—the analysis in *Erickson*, deciding that Lily's loss calculation was adequately supported. *See, e.g.*, *United States v. Stivers*, 1:16-cr-232-JMS-DML, 2020 WL 2804074, at *3 (S.D. Ind. May 29, 2020) ("Although Dr. Cooper's estimates of future costs by nature involve some degree of speculation, the estimates are based on medical knowledge and expertise and meet the appropriate standard for expert opinion testimony under Federal Rule of Evidence 702."); *cf. United States v. Perricone*, No. 5:18cr-00095, at *1–2 (W.D. Tex. Feb. 6, 2023) (ECF No. 161) (awarding $5,000 to Lily after finding her request to be "reasonable in light of the emotional distress" suffered, despite the defendant arguing that the Government had failed to prove "every penny sought"). This is consistent with the Fourth Circuit's admonition that even "somewhat speculative" reasoning is not sufficient to justify declining to impose a restitution order. *See Arce*, 49 F.4th at 396.

---

[5] The Department of Justice's Child Exploitation and Obscenity Section ("CEOS") informs that because this database relies on information reported from U.S. Attorney's Offices, it does not include decisions that have not been reported to CEOS. It is possible, if not likely, that other restitution orders have not made it into the database. In fact, Lily's attorney states that, as of May 19, 2022, courts have entered 1,681 orders to pay restitution to Lily. ECF No. 104-2, at 2.

6

As best the Government can discern, as of September 2022, Lily had recovered a total of $2,444,081.18 in restitution. *See Smith*, 4:22-cr-40006 (D. Mass. Apr. 6, 2023) (ECF No. 100).[6] That means that Lily has recovered less than half of her claimed losses (and less than half of the greatest loss amount found in any case).[7] "The cause of [Lily's] general losses is the trade in her images. And [the defendant] is a part of that cause, for he is one of those who viewed her images." *Paroline*, 572 U.S. at 456. "Denying restitution in cases like this would also be at odds with the penological purposes of § 2259's mandatory restitution scheme." *Id.* at 457. A restitution award to Lily of at least $3,000 is thus justified in this case.

### B. The Full Amount of Jen's Losses

As is evident from Government's Exhibit 2, the Vicky series has been in circulation for well over a decade, and the images of Lily's abuse have been found in the possession of thousands of offenders. The JBN Flowers1 Series is a newer series that has been circulating since approximately 2019, *see* Gov't Ex. 3 (filed under seal), which means that there are many fewer restitution data points for Jen than there are for Vicky. Indeed, the Government has been unable to find any references to this series on Westlaw or LexisNexis,[8] and the CEOS database reflects that U.S. Attorney's Offices have not reported any orders of restitution to Jen (despite such orders having been issued, as is explained below).

---

[6] The Government sought updated information from Lily's counsel but did not receive a response.

[7] Notably, it appears that no court has ever questioned Lily's non-medical losses, which total $1,257,021.13. ECF No. 104-2, at 2. Lily's counsel's costs and fees (recoverable under § 2259(c)(E)) total another $102,570.29 as of June 11, 2020 (and are thus undoubtedly higher now). ECF No. 104-4, at 113–23. So, the full amount of Lily's loss, less her projected medical expenses, is at least $1,359,591.42. That means that even if Lily's medical expenses were projected to be only $1.1 million (less than one-quarter of Dr. Cooper's calculation), and even if Mr. Gray were to fully pay a $3,000 restitution award, Lily would still not be made whole.

[8] Anecdotally, some courts issue perfunctory restitution orders without written opinions.

In evaluating Jen's losses, the Court must first determine the "full amount" of losses that she has incurred. Based on the information currently available, that number is $192,000. The Court must then evaluate Mr. Gray's "relative role in the causal process that underlies" these losses. The factors to be evaluated in assessing Mr. Gray's relative role might include "the number of past criminal defendants found to have contributed to [Jen's] general losses; reasonable predictions of the number of future offenders involved . . . ; whether [Mr. Gray] reproduced or distributed images of the victim; whether [Mr. Gray] had any connection to the initial production of the images; [and] how many images of [Jen Mr. Gray] possessed." *Paroline*, 572 U.S. at 460. But these "guideposts" are "suggestions rather than prerequisites." *Dillard*, 891 F.3d at 161.

In terms of Mr. Gray's particular offense conduct, he possessed one video of Jen that was seven minutes and five seconds in length. The Government believes, based on the location of the file in the "downloads" subfolder of a "Freenet" folder on his computer, that Mr. Gray obtained this video of Jen through Freenet. The Government is not able confirm whether Mr. Gray distributed this video to others, although he may have passively done so through his use of Freenet. *Cf.* PSR ¶ 29. It is known that Mr. Gray played no role in the initial production of this video.

It is difficult to say with precision the number of defendants who have contributed to Jen's losses. It is virtually impossible to assess how many defendants have been *convicted* of possessing Jen's images because many defendants (like Mr. Gray) agree as a part of a plea agreement to make restitution to victims beyond their offense(s) of conviction. And it is difficult to know how many cases in which Jen is considered to be a victim because not all cases are reported from U.S. Attorney's offices to Main Justice. However, based on information reported in the Department of Justice's Victim Notification System ("VNS"), the Government is aware of 332 cases in which the Government has considered Jen to be a victim, as of June 9, 2023.

8

It is similarly difficult to know how much restitution has been ordered for Jen to date or how particular courts have calculated Jen's losses. With respect to her losses, Jen's counsel is not aware of any courts having conducted a particular loss calculation as to Jen's losses prior to ordering restitution, *see supra* n.8, so the "greatest amount of . . . losses found in any case involving" Jen is not known. In terms of restitution, based on information collected from VNS as of June 9, the Government is aware of 34 restitution orders to Jen, which total $116,500. Jen's counsel has informed that, as of June 7, 2023, Jen had collected $15,610.04 in restitution for her losses. Gov't Ex. 3.

While it of course cannot be known the number of future offenders who might possess Jen's images, it is reasonable to expect this number to increase exponentially as these images circulate more widely, given that they have "only" been in circulation for a few years.

Given Mr. Gray's role in perpetuating Jen's abuse, Jen's significant losses, and the small amount of restitution that Jen has collected to date, the Government submits that Jen should be awarded at least $3,000 in restitution.

## CONCLUSION

For the reasons stated above, the Government respectfully requests that the Court order restitution in at least the amount agreed to by the parties, $3,000 per victim.

Respectfully submitted,

CHRISTOPHER R. KAVANAUGH
United States Attorney

/s/ Jason M. Scheff
Jason M. Scheff
Assistant United States Attorney
New York Bar No. 5188701

9

United States Attorney's Office<br>
310 First Street, SW, 9th Floor<br>
Roanoke, Virginia 24011<br>
540-857-2250<br>
Jason.Scheff@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2023, I caused to be filed this sentencing memorandum with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

s/Jason M. Scheff<br>
Assistant United States Attorney