United States v. Joseph Michael Smith

District of Massachusetts

22-CR-40006

| 04/06/2023 | 100 | Judge Mark G. Mastroianni: Electronic order entered. Following a hearing on restitution held on March 31, 2023, and considering the sealed memoranda filed by Defendant and the government (Dkt. Nos. 94, 95, and 98), the court orders restitution as follows. The victim identified as "PD 11" shall receive $3,000, as requested and as both Defendant and the government agree. Under 18 U.S.C. § 2259(b)(2)(A), "[t]he court shall determine the full amount of the victim's losses that were incurred or are reasonably projected to be incurred by the victim as a result of the trafficking in child pornography depicting the victim." Then, "[a]fter completing the determination required under subparagraph (A), the court shall order restitution in an amount that reflects the defendant's relative role in the causal process that underlies the victim's losses, but which is no less than $3,000." 18 U.S.C. § 2259(b)(2)(B). The court finds PD11 has or will suffer $266,587.67 in losses "as a result of the trafficking in child pornography depicting the victim," of which she has received only $8,787 in restitution to date. (Dkt. No. 94-4; 98-1.) The court further finds that a restitution amount of $3,000 as to this Defendant is reasonable, given his somewhat minimal "role in the causal process that underlies [PD 11's] losses," his possession of only one image, and the lack of aggravating factors such as distribution or a connection to the initial production of the images. See Paroline v. United States, 572 U.S. 434, (2014) (listing non-exhaustive factors for determining the proper amount of restitution). The victim identified as "Lily" (from the "Vicky" series) shall receive $6,000. Lily requested $10,000 in restitution, and the government supports her request of this amount. Defendant argues Lily should receive nothing in restitution because she did not provide counsel with her aggregate restitution recovery to date. However, as the government notes in its filing, "[i]n a communication with the United States Attorney's Office in September 2022, [Lily's counsel] represented that Lily had been paid $2,444,081.18." (Dkt. No. 98 at 5; see also Dkt. No. 98-3.) The court finds Lily has or will suffer $6,008,536.98 "as a result of the trafficking in child pornography depicting the victim," as set forth in the extensive documentation supporting her request. (See Dkt. No. 98-2.) The court further finds that a restitution amount of $6,000 as to this Defendant is reasonable, given his somewhat minimal "role in the causal process that underlies [Lily's] losses," the large amount of outstanding losses not yet recovered ($3,563,455.11), Defendant's possession of two videos, and the lack of aggravating factors such as distribution or a connection to the initial production of the videos. |

The victim identified as "Pia" (from the "Sweet White Sugar" series) shall receive $4,000. Pia requested $5,000 in restitution, and the government supported her request of this amount. Defendant, as with Lily, argues Pia should nothing in restitution because she did not provide counsel with her aggregate restitution recovery to date. However, as the government notes in its filing, "[a]ccording to an email dated September 2022, 'Pia' has collected $533,133.50 in restitution." (Dkt. No. 98 at 5; see also Dkt. No. 98-5.) The court finds Lily has or will suffer $1,723,000.00 "as a result of the trafficking in child pornography depicting the victim," as set forth in the extensive documentation supporting her request. (Dkt. No. 98-4.) The court further finds that a restitution amount of $4,000 as to this Defendant is reasonable, given his somewhat minimal "role in the causal process that underlies [Pia's] losses," the amount of outstanding losses not yet recovered ($1,189,866.50), Defendant's possession of one video, and the lack of aggravating factors such as distribution or a connection to the initial production of the video.

The victim identified as "Tara" shall not receive restitution. Unfortunately, Tara's request for restitution is not supported by adequate documentation. The government notes "the minimal documentation provided in connection with Tara's losses," but it still seeks "the minimal amount of restitution required by law--$3,000." (Dkt. No. 98 at 6.) The court, however, cannot reliably calculate "the full amount of the victim's losses that were incurred or are reasonably projected to be incurred by the victim as a result of the trafficking in child pornography depicting the victim." 18 U.S.C. § 2259(b)(2)(A). Moreover, it is unclear the amount of restitution Tara has received to date. See 18 U.S.C. § 2259(b)(2)(C) ("A victim's total aggregate recovery pursuant to this section shall not exceed the full amount of the victim's demonstrated losses."). In this regard, as Defendant points out, the United States District Court for the District of Columbia explained in 2011 that "'Tara' is not requesting any amount of restitution because she has been paid in full by other defendants." United States v. Monzel, 2011 WL 10549405, at *1 (D.D.C. Jan. 11, 2011). And in January of 2019, the government represented "that the victim in the 'Tara' series is no longer seeking restitution." United States v. Hollman, 2019 WL 418208, at *1 (C.D. Ill. Jan. 14, 2019); see also United States v. Lawson, 2020 WL 4035105, at *1 (E.D. Ky. July 17, 2020) ("The United States contends that while Chelsea and Tara are both 'victims' eligible for restitution, it 'cannot recommend a restitution order with respect to Tara because her request does not sufficiently identify outstanding loss amounts that are compensable under federal law.'"). As the court explained in Hollman, because "[t]he victim does not provide any indication of how the Defendant's conduct contributed to the loss reported" and has not shown her "losses do not exceed the restitution she has already received," the

|  |  | court will not order restitution as to Tara. Lawson, 2020 WL 4035105, at *3. (Zamorski, Michael) (Entered: 04/06/2023) |